IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Environmental       :
Defense Foundation,               :
                Petitioner     :
                           :  No. 609 M.D. 2019
         v.             :
                           :  Argued: September 17, 2020
Commonwealth Department of    :
Conservation and Natural Resources, :
and Cindy Adams Dunn, in her     :
official capacity as Secretary,     :
                Respondents  :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE J. ANDREW CROMPTON, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*__OPINION NOT REPORTED__*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                     FILED: August 6, 2021

       Before this Court in our original jurisdiction are the preliminary objections filed by the Pennsylvania Department of Conservation and Natural Resources (DCNR) and Cindy Adams Dunn, Secretary of Conservation and Natural Resources, of DCNR (Secretary Dunn), (collectively, DCNR), to an amended petition for review in the nature of a mandamus action seeking declaratory relief filed by the Pennsylvania Environmental Defense Foundation (Foundation).

## I. Background

       The Petitioner, the Foundation, is a non-profit organization incorporated under the laws of Pennsylvania since 1986 for the purposes of protecting and

preserving the environmental interests of its members in Pennsylvania. Five members of the Foundation have filed affidavits in support of the amended petition for review.

The Respondent DCNR is the "trustee" of the public trust set forth in Article I, Section 27 of the Pennsylvania Constitution, known as the Environmental Rights Amendment (ERA).[1]

The Respondent Secretary Dunn, acting in her official capacity, is the Secretary of DCNR, appointed by the Governor and approved by a majority of the members elected to the Senate to serve as the head of DCNR.[2] Secretary Dunn has taken an oath to "support, obey and defend the Constitution of Pennsylvania." PA. CONST. art. VI, §3; Section 218 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §78.

### A.    The Environmental Rights Amendment

In 1971, the Commonwealth adopted the ERA. The ERA imposes on DCNR, as trustee, the duty to "conserve and maintain" Pennsylvania's public natural resources "for the benefit of all the people," including generations yet to come. PA. CONST. art. I, §27. The ERA defines the people's rights to the public natural resources to include "clean air, pure water, and . . . the preservation of the natural, scenic, historic

---

[1] The ERA provides:
> The people have a right to clean air, pure water, and the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

PA. CONST. art. I, §27.

[2] Section 301 of the Conservation and Natural Resources Act (CRNA), Act of June 28, 1995, P.L. 89, *as amended*, 71 P.S. §1340.301.

and esthetic values of the environment." *Id.* Pennsylvania's state parks and forests are public natural resources for which DCNR has trustee duties under the ERA.

### B.      The Conservation and Natural Resources Act

The CNRA created DCNR and tasked it with advocating for and managing the ERA trust assets found in the State Forests and State parks, granting it the primary mission

> to maintain, improve and preserve State parks, to manage State forest lands to assure their long-term health, sustainability and economic use, to provide information on Pennsylvania's ecological and geological resources and to administer grant and technical assistance programs that will benefit rivers conservation, trails and greenways, local recreation, regional heritage conservation and environmental education programs across Pennsylvania.

Section 101(b)(1) of the CNRA, 71 P.S. §1340.101(b)(1).

### C.      The 2016 State Forest Resource Management Plan

Periodically, since 1955, DCNR's Bureau of Forestry (Bureau) has prepared forest resource management plans. Prior plans were adopted in 1970, 1985, 2003, and 2007. The most recent state forest resource management plan, and the one currently in effect and at issue here, is the 2016 State Forest Resource Management Plan (2016 SFRMP).[3] It was the first update to the plan in nine years. (2016 SFRMP, Letter from State Forester, Dan Devlin.)

The 2016 SFRMP is a 220-page document with a table of contents, executive summary, appendix, colored photographs, and several introductory chapters, followed by a series of 12 resource chapters that focus on the variety of resources, uses, and values of state forest land. The resource chapters are the following:

---

[3] The 2016 SFRMP is attached to the Foundation's original Petition for Review as Exhibit "A."

Communications, Timber and Forest Products, Native Wild Plants, Wildlife, Water Resources, Soils, Geologic Resources, Wildland Fire, Forest Health, Recreation, Infrastructure, and Cultural Resources. Each resource chapter contains an informational/educational section, an assessment of forest conditions, accomplishments, guidelines, tools, resources, and strategies and tactics for addressing forest threats and future management of Pennsylvania forests. An electronic version of the 2016 SFRMP can be found online at http://www.docs.dcnr.pa.gov/cs/groups/public/documents/document/dcnr_20032045.pdf (last visited on 08/05/2021).

According to State Forester, Dan Devlin, the 2016 SFRMP and the others before it were developed and relied on to "guide [DCNR's] management and communicate [DCNR's] management principles and goals to the public." *Id.* It is described as

> the primary instrument that the [B]ureau uses to plan, coordinate, and communicate its management of the state forest system. By relating the broad policies of the [B]ureau's strategic plan to focused goals and objectives and specific operational guidelines, the SFRMP lays the groundwork for ensuring that the overarching goal of state forest management - ensuring sustainability - is achieved.

(2016 SFRMP at 24.)

It further states that it is "not a prescriptive manual," but is intended to provide the Bureau staff with context, background, goals, and objectives to consider when making management decisions, and to provide Pennsylvanians with a description of its management approaches, context, goals, and objectives as an educational document. *Id.* at 20.

At issue here are certain statements contained in the 2016 SFRMP, which the Foundation claims evidences DCNR's breach of its fiduciary duties under the ERA

4

to protect, conserve, and maintain our State Forest public natural resources. (Amended Petition for Review (Am. Pet.) ¶2.) The Foundation asks this Court to determine questions arising from the 2016 SFRMP, and to direct DCNR to amend the 2016 SFRMP and administer State Forest trust assets consistent with its trustee duties, and our Supreme Court's 2017 decision in *Pennsylvania Environmental Defense Foundation v. Commonwealth*, 161 A.3d 911 (Pa. 2017) (*PEDF*).

Specifically pertinent to this dispute are several statements made, and/or positions taken, by DCNR throughout the 2016 SFRMP, relative to DCNR's management of the State Forests and its handling of monies resulting from oil and gas drilling on State Forest land. The Foundation contends that extraction and sale of oil and gas has caused and continues to cause immediate and long-term degradation to our State Forests' trust assets. The Foundation believes that DCNR's plan for management of our State Forests must be focused solely on ecosystem rehabilitation and management, not on the economic value of these resources. The Foundation takes issue with various statements extracted from the 2016 SFRMP, which it claims demonstrate that DCNR is currently managing our State Forests in a manner that is inconsistent with its fiduciary duties as trustee under the ERA and in derogation of *PEDF*. It also faults DCNR for its failure to articulate in the 2016 SFRMP how the degradation, diminution, and depletion of these assets by existing oil and gas development will be remedied. The Foundation asks us to (1) declare that certain statements made by DCNR in the 2016 SFRMP are contrary to, and in violation of, the ERA and (2) compel DCNR to amend the 2016 SFRMP so that it comports with DCNR's responsibilities to manage our State Forests in a manner consistent with its trustee duties under the ERA.

**D.** *PEDF v. Commonwealth*

In *PEDF*, the Foundation, *i.e.*, the Petitioner in this case, commenced a declaratory judgment action against the Commonwealth, challenging two recent legislative enactments to The Fiscal Code,[4] which directed that royalties, rents, and bonuses generated from the leasing of State Forest and park lands for oil and gas exploration and extraction be transferred to the General Fund to pay for government operations in 2009 and 2010. The Foundation alleged that these legislative enactments violated the ERA.

In considering the question, the Supreme Court reaffirmed the legal principles pronounced by a plurality of the Court in *Robinson Township v. Commonwealth*, 83 A.3d 901 (Pa. 2013) (plurality), ultimately overruling the three-part balancing test for determining if an action violates the ERA set forth in *Payne v. Kassab*, 312 A.2d 86, 94 (Pa. Cmwlth. 1973) and establishing a new test that requires courts to adhere to private trust principles when deciding whether the Commonwealth is in violation of the ERA. *PEDF*, 161 A.3d at 933 n.26.

The Supreme Court analyzed each of the ERA's three clauses, explaining that the first clause is "a prohibitory clause declaring the right of citizens to clean air and pure water, and . . . the preservation of natural, scenic, historic and esthetic values of the environment." *Id.* at 931. In other words, the first clause prohibits the Commonwealth from acting in a way that unreasonably impairs citizens' rights to a clean environment. *Id.* The second clause of the ERA confers ownership of the state's "public natural resources" upon Pennsylvania's citizens, including future generations. *Id.* The third clause of the ERA establishes a public trust, with the Commonwealth as

---

[4] Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §§1-1805.

6

trustee, the natural resources as the corpus of the trust, and the citizens as the beneficiaries of the trust. *Id.* at 932.

The Supreme Court enumerated trust principles and how they are to be applied. "As a fiduciary, the Commonwealth has a duty to act toward the corpus of the trust–the public natural resources–with prudence, loyalty, and impartiality." *Id.* at 932. The Court found that two fiduciary duties are imposed on the Commonwealth as a trustee to prevent public or private harm to trust property: "a duty to prohibit the degradation, diminution, and depletion" of our public resources and "a duty to act affirmatively via legislation to protect the environment." *Id.* at 911.

The Supreme Court explained that the Commonwealth's trustee obligations "create a right in the people to seek to enforce the obligations" and therefore the public trust provisions of the ERA are "self-executing." *Id.* at 974. In other words, the public trust obligations of the ERA are enforceable regardless of whether there is legislation providing for such enforcement.[5]

The Supreme Court went on to find that the minerals under state parks and forests were "part of the corpus of Pennsylvania's environmental public trust." *Id.* at 936. The Court enforced the duty of the State to protect the environment and serve as a trustee, rather than as a proprietor, of its "public natural resources." *Id.* Although *PEDF* did not bar DCNR from leasing state land for the exploration and development of oil and gas, it required that royalties generated from production be committed to "furthering the purposes, rights, and protections" of the ERA. *Id.* at 934-35. To that end, the Supreme Court ruled that Sections 1602-E and 1603-E of the Fiscal Code[6]

---

[5] John C. Dernbach et al., *Recognition of Environmental Rights for Pennsylvania Citizens: Pennsylvania Environmental Defense Foundation v. Commonwealth of Pennsylvania*, 70 Rutgers U.L. Rev. 803, 835 (2018).

[6] Added by the Act of October 9, 2009, P.L. 537, 72 P.S. §§1602-E, 1603-E.

7

were facially unconstitutional because they allocated the royalties from the sale of oil and gas to the General Fund, which was a "non-trust purpose" in violation of the ERA. *Id.* at 938-39.[7]

## II. The Foundation's Amended Petition for Review

With *PEDF* as its springboard, the Foundation initiated this action on November 5, 2019, by filing a petition for review in the nature of a complaint for declaratory and mandamus relief. DCNR filed preliminary objections, and the Foundation filed its amended petition for review on January 22, 2020.[8] It is the Foundation's position that, as demonstrated throughout the 2016 SFRMP, DCNR has been and is continuing to violate its fiduciary duties, under the ERA with respect to its

---

[7] The Supreme Court remanded the matter to the Commonwealth Court to decide whether bonuses and rental payments deposited into the General Fund to pay for government operations in 2009 and 2010 pursuant to two fiscal enactments were part of the trust corpus. On July 29, 2019, this Court published its decision on remand holding that bonuses and rental payments were not for the severance of natural resources but were consideration for the exploration for oil and gas on public land, and therefore, they were not part of the trust corpus. Therefore, Sections 1604-E and 1605-E of the Fiscal Code and Section 1912 of the Supplemental General Appropriations Act of 2009 were not facially unconstitutional. *Pennsylvania Environmental Defense Foundation v. Commonwealth*, 214 A.3d 748, 751 (Pa. Cmwlth. 2019). On August 12, 2019, the Foundation filed an appeal to the Pennsylvania Supreme Court, and the Court reversed this Court's decision. *Pennsylvania Environmental Defense Foundation v. Commonwealth*, --- A.3d --- (Pa., No. 64 MAP 2019, filed July 21, 2021).

[8] The present action is one of a series of legal actions by the Foundation seeking to enforce the Supreme Court's 2017 decision in *PEDF*. *See Pennsylvania Environmental Defense Foundation v. Commonwealth* (Pa. Cmwlth., No. 358 M.D. 2018, filed 5/17/18) (petition for declaratory relief asking this Court to declare 2017 amendments to Fiscal Code eliminating DCNR's Oil and Gas Lease Fund and making and proposing $96 million in money transfers from the Fund unconstitutional); *Pennsylvania Environmental Defense Foundation v. Commonwealth* (Pa. Cmwlth., No. 393 M.D. 2019, filed 7/17/19) (petition for declaratory relief asking this Court to block transfers from DCNR's Oil and Gas Fund to pay for DCNR's operating expense in the Fiscal Year 2019-20 budget). That case was stayed on September 23, 2019, pending this Court's disposition of the parties' cross-motions for summary relief at 358 M.D. 2018.

management and administration of our State Forests' natural resources, and it asks us to make various declarations to this effect. The Foundation also asks us to compel DCNR to amend the 2016 SFRMP to ensure that DCNR manages State Forests' natural resources consistent with its trustee duties under the ERA.

By way of background, the amended petition for review recounts how in 1995, as part of the newly created DCNR, the Bureau adopted a strategic plan, entitled *Penn's Woods, Sustaining Our Forests* ("*Penn's Woods*"), to manage our State Forest trust assets and to guide the development of future State Forest Resource Management Plans consistent with its trustee duties to conserve and maintain these trust assets under the ERA. (Am. Pet. ¶30.) The Foundation avers that from 1995 to 2016, DCNR's stated strategic plan was to manage our State Forest trust assets based on the science of "ecosystem management" consistent with its strategic plan adopted in *Penn's Woods*, and its trustee duties under the ERA. *Id.* ¶30. With respect to DCNR's State Forest minerals policy, *Penn's Woods* stated that it "should hold virgin, surface-minable coal as reserves and should explore and develop other minerals on State Forest lands to provide long-term good to the citizens of the Commonwealth only when these activities are consistent with ecosystem management." *Id.* ¶33 (citing *Penn's Woods* at 28).

It is the Foundation's position that DCNR has moved away from utilizing "ecological" principles to guide its management decisions on State Forest lands in favor of "economic" principles. *Id.* ¶34. The Foundation claims that in the 2016 SFRMP, DCNR "changed its paradigm" for administering the State Forest trust assets to now equate the economic values of oil and gas with the value of the forest ecosystem itself, including the people's constitutional right to "clean air, pure water, and the

9

preservation of the natural, scenic, historic and esthetic values of the [forest] environment." *Id.* ¶4.

In Count "A," the Foundation alleges that DCNR is in violation of its fiduciary duties as trustee under the ERA, as evidenced by the following sentence on page 156 of the 2016 SFRMP:

> The ***economic use*** and sound extraction and utilization of geologic resources ***is part of the [B]ureau's mission*** in managing these lands.

(2016 SFRMP at 156) (emphasis added).

According to the Foundation, this particular excerpt evidences that DCNR has used, and intends to continue to use, funds derived from the extraction and sale of the State Forests' oil and natural gas for the Commonwealth's economic use in funding general government operations, including DCNR's own annual operations, in place of revenue from the General Fund.[9]  *See* Am. Pet. ¶¶62-64.  The Foundation asserts that using State Forests' natural resources for the benefit of the Commonwealth is unconstitutional under *PEDF*, which held that funds generated from leasing State lands should be used solely to conserve and maintain the State's natural resources, *i.e.*, money generated from leasing State lands must remain in the corpus of the trust. *PEDF*, 161 A.3d at 938-39.  The Foundation asserts that DCNR is "aware of and bound by the law established by the Supreme Court in *PEDF*[], but [has] failed to amend the 2016 [SFRMP] to comply with the 2017 mandates of the Supreme Court and continues [in the 2016 SFRMP] to assert [it has] an unconstitutional mission to sell the oil and

---

[9] Along these same lines, see 2016 SFRMP section titled, "Timber and Forest Products," which also states that "***timber and other forest products on [S]tate [F]orest lands are managed to promote*** and maintain desired landscape conditions and provide sustainable social and ***economic benefits to the [C]ommonwealth.***"  (2016 SFRMP at 8) (emphasis added).

10

gas resources of our State Forest[s] for the economic benefit of the Commonwealth, including paying for DCNR's operations costs." (Am. Pet. ¶92.)

Based on these allegations, the Foundation asks this Court to declare:

• DCNR's ***stated "mission"*** to use the proceeds from the extraction and sale of coal, oil, natural gas and other geologic resources of our State Forests for the economic benefit of itself and the Commonwealth ***is a violation of its constitutional trustee duties under the ERA***. *Id.* ¶93(a).

• DCNR and Secretary Dunn have violated their fiduciary duties of prudence, loyalty and impartiality as trustees under the ERA by treating our State Forests' geologic resources as proprietors, and ***declaring their mission in the 2016 SFRMP*** to be the extraction and sale of public natural resources of our State Forests for economic use by them and the Commonwealth. *Id.* ¶93(b).

• The phrase "in the best interest of the Commonwealth" in section 302(a)(6) of the CNRA, 71 P.S. §1340.302(a)(6), does not mean that DCNR can lease and sell our public natural resources for money for the economic use by the Commonwealth in violation of the ERA. *Id.* ¶93(c).

• DCNR's mission as stated in CNRA section 101(b) to manage our State Forest lands to assure their long-term health, sustainability and economic use does not require DCNR to authorize the extraction and sale of the oil and gas that are a part of the public natural resources of our State Forests when that activity will degrade, diminish and deplete our State Forest public natural resources contrary to the mandates of the ERA. *Id.* ¶93(d).

• DCNR's ***expansion of its mission in administering the State Forest public trust under the 2016 SFRMP*** to include the extraction and sale of oil and gas from our State Forests for the economic benefit of the Commonwealth violates the ERA. *Id.* ¶93(e).

11

• The oil and natural gas resources of our State Forests, as part of the corpus of the public trust under the ERA, cannot be used for the economic benefit of the Commonwealth because such economic use violates the purpose of the trust, which is to conserve and maintain those resources for the benefit of the people. *Id.* ¶93(f).

• Both DCNR and Secretary Dunn have violated the ERA and their duties thereunder *by continuing to use money* from the extraction and sale of oil and natural gas from our State Forests for purposes other than conserving and maintaining the public natural resources of our State Forests, including protecting the clean air, pure water and natural, scenic, historic and esthetic values of our State Forests. *Id.* ¶93(g).

• Secretary Dunn has violated her oath to support, obey and defend the Constitution of Pennsylvania by *failing to abide by the law established by the Supreme Court* concerning the use of ERA trust assets, including the proceeds from the sale of our State Forests' oil and gas, and *by failing to require amendment of the 2016 SFRMP* to comply with the Supreme Court mandates; to the contrary, she has *continued to assert* that DCNR's mission in administering our State Forest trust assets is to sell the oil and gas trust assets and use the money from this sale for the unconstitutional purpose of paying for general State government operations, including paying for DCNR's operations costs, rather than implementing projects necessary to conserve and maintain our State Forests. *Id.* ¶93(h).

• Both DCNR and Secretary Dunn have violated the ERA by *failing to explain* to the trust beneficiaries *in their 2016 SFRMP* the nature of their fiduciary duties under the ERA in administering our State Forest trust assets under the 2016 SFRMP, by failing to explain to the beneficiaries how they have complied with those duties under past plans, and

12

by failing to explain how the actions they will take to comply with those duties in the future. *Id.* ¶93(i).

As part of this Count, the Foundation also asks this Court to compel DCNR to remove from the 2016 SFRMP all statements that indicate its mission is to manage our State Forests by selling their oil and gas resources for economic use. *Id.* ¶93(j).

Next, in Count "B," the Foundation argues that DCNR is in violation of its fiduciary duties as the trustee under the ERA as evidenced by the following statement which appears on page 154 of the 2016 SFRMP:

> ***Extraction of geologic resources such as coal, oil, and natural gas also has long been a keystone to Pennsylvania's economy. These resources provide*** benefits to society including: domestic energy for heating, fuel, and electrical generation; material for plastic polymers and manufacturing and industrial processes; material for infrastructure construction; and job creation in areas throughout the Commonwealth. Geologic resources on state forest lands offer a variety of environmental, social, and ***economic values that the [B]ureau considers in ecosystem management***.

(2016 SFRMP at 154) (emphasis added).

The Foundation contends that DCNR's recent ideology, which integrates economic considerations, is contrary to DCNR's trustee duties under the ERA. (Am. Pet. ¶103.) It avers that DCNR's approach to managing our State Forests as a "proprietor" of State Forest trust assets distorts the fundamental principles of ecosystem management that previously guided DCNR's management of our State Forests, and it is contrary to the principles established in DCNR's 1995 strategic plan, *Penn's Woods*, and the ERA. *Id.* ¶¶95, 98.

Based on these allegations, the Foundation asks this Court to find and declare the following:

13

- DCNR's ***assertion in the 2016 SFRMP***, which it follows to administer our State Forest public trust assets, that the social and economic values from selling our State Forests' oil and gas are on par with the ecological health of the State Forests violates DCNR's fiduciary duties as the trustee of our State Forest under the ERA and the rights of the beneficiaries thereunder. *Id.* ¶103(a).

- ***In its 2016 SFRMP*** to administer our State Forest trust assets, ***DCNR's assertion that*** the social and economic values from selling our State Forests' oil and gas are considered in ecosystem management is contrary to the principles of ecosystem management articulated in DCNR's 1995 strategic plan, *Penn's Woods*, to implement the ERA. *Id.* ¶103(b).

- DCNR and Secretary Dunn have violated their fiduciary duties of prudence, loyalty and impartiality as trustees of our State Forest trust assets under the ERA and have violated the beneficiaries' rights thereunder ***by declaring in the 2016 SFRMP*** for administration of those trust assets that the social and economic values from selling our State Forests' oil and natural gas be considered in ecological management of the State Forests. *Id.* ¶103(c).

In this Count, the Foundation also asks this Court to compel DCNR to remove from the 2016 SFRMP any statements or discussions that consider the social and economic values of selling our State Forests' oil and gas in managing the ecological health of our State Forests. *Id.* ¶103(d).

In Count "C," the Foundation next avers that DCNR is in violation of its fiduciary duties as trustee under the ERA as evidenced by its assertion in the 2016 SFRMP that

[m]anaging geologic resources requires thorough analysis, strategic planning, and attentive oversight to ensure that the

14

*value of geologic resources is balanced with other forest uses and values*.

(2016 SFRMP at 156) (emphasis added).

The Foundation contends that this statement means that DCNR is allowing the ecological value of our State Forests' geologic resources to be degraded, diminished, or depleted in order to support the economic value derived from extracting the geologic resources. (Am. Pet. ¶105.) The Foundation asserts that the constitutional rights established under the ERA cannot be balanced with the proprietary economic benefits from the extraction and sale of State Forests' oil and natural gas. Such balancing violates the ERA and the protections of the inalienable rights established therein. *Id.* ¶114.

Based on these assertions, the Foundation seeks the following declarations from this Court:

> • **In its 2016 SFRMP** to administer our State Forest trust assets, DCNR **has violated its fiduciary duties as trustee under the ERA by asserting** that it can "balance" the purposes of the ERA, *i.e.*, the right to have our public natural resources conserved and maintained by the Commonwealth as trustee for the benefit of the people living today and for future generations, with the alleged proprietary right to extract and sell our public resources for public use. *Id.* ¶115(a).
>
> • DCNR is in violation of its fiduciary duties as trustee, **by asserting in the 2016 SFRMP that** it can "balance" the economic value of the extraction and sale of oil and gas on State Forest land with ecological values of our State Forests. *Id.* ¶115(b).
>
> • DCNR's proprietary attempt to "balance" rights under the ERA with rights established with other articles of the Constitution, including Commonwealth's right to

appropriate funds and enact laws, violates Article I Section 25 of the Pennsylvania Constitution. *Id.* ¶115(c).

• DCNR has no constitutional right under the ERA to lease our State Forest land and sell our State Forest oil and natural gas. *Id.* ¶115(d).

• DCNR cannot "balance" the constitutional rights established under the ERA with any proprietary activities or policies involving non-trust purposes of the Commonwealth. *Id.* ¶115(e).

• DCNR cannot "balance" the constitutional rights established under the ERA with any proprietary activities that would result in the degradation, diminution and depletion of the public natural resources of our State Forests, including the oil and natural gas resources that are a part thereof. *Id.* ¶115(f).

• DCNR and Secretary Dunn, as trustees, violate both the ERA and Section 25 of Article I of the Pennsylvania Constitution *by stating in the 2016 SFRMP* to administer our State Forest trust assets that "[m]anaging the [coal, oil, natural gas and other] geologic resources requires thorough analysis, strategic planning, and attentive oversight to ensure that the value of geologic resources is balanced with other forest uses and values." *Id.* ¶115(g).

• Both DCNR and Secretary Dunn have violated the ERA and their fiduciary duties thereunder *by approving the 2016 SFRMP* to administer the State Forests' public trust assets without evaluating their current compliance with the ERA's purposes and without articulating how future compliance will be achieved, *e.g.*, without evaluating whether State Forest public natural resources have been conserved and maintained, without evaluating whether the clean air, pure water and natural, scenic, historic, and esthetic values of the State Forests have been protected and preserved, and without identifying actions that need to be

16

taken to ensure our State Forests' public natural resources will be conserved and maintained in the future. *Id.* ¶115(h).

As part of this Count, the Foundation also asks this Court to compel DCNR to amend the 2016 SFRMP to remove the unconstitutional proprietary statement that "[m]anaging the [coal, oil, natural gas, and other] geologic resources requires thorough analysis, strategic planning, and attentive oversight to ensure that the value of geologic resources is balanced with other forest uses and values" and related discussion based on this statement. *Id.* ¶115(i).

Next, in Count "D," the Foundation contends that DCNR is in violation of its fiduciary duties as trustee under the ERA as evidenced by its assertion in the 2016 SFRMP that

> ***[d]evelopment of geologic resources should occur*** when it is compatible with landscape goals and functions, avoids sensitive ecological and socially important areas, and minimizes adverse impacts.

(2016 SFRMP at 156) (emphasis added).

The Foundation argues that according to this statement, DCNR is acting in contravention of the ERA because it is "sanctioning" the leasing of State Forest land for oil and gas extraction and sale without explaining how it will prevent and remedy the inevitable degradation, diminution and depletion of the State Forests' public natural resources. (Am. Pet. ¶¶116-22.)

Based on these allegations, the Foundation asks this Court to declare the following:

> • The ***conditions established by DCNR in its 2016 SFRMP*** to administer our State Forest public trust assets and allow the development of oil, gas and other geologic resources, *i.e.*, its statement that "[d]evelopment of geological resources should occur when it is compatible with landscape goals and functions, avoids sensitive areas, and minimizes adverse impacts," are contrary to and in violation

17

of the ERA because they sanction leasing of State Forest land for oil and gas. *Id.* ¶123(a).

• Both DCNR and Secretary Dunn have violated the ERA and their fiduciary duties as trustee thereunder ***by stating in the 2016 SFRMP*** to administer our State Forests' trust assets that development of the State Forests' geologic resources should occur under conditions that will not conserve and maintain those resources, which are part of the corpus of the ERA public trust. *Id.* ¶123(b).

• Both DCNR and Secretary Dunn have violated the ERA and their duties thereunder ***by failing to properly explain in their 2016 SFRMP*** to administer our State Forests' trust assets how any decision to lease State Forest land for the development of oil, gas or any geologic resources will be made, what evaluation will be conducted to ensure compliance with the ERA, and how the trust beneficiaries will be apprised of this evaluation prior to any decision to lease our State Forest land for this purpose. *Id.* ¶123(c).

In Count "E," the Foundation asserts that DCNR adopted the 2016 SFRMP to administer the State Forests' trust assets without including any evaluation of the degradation caused by past and present oil and gas development or any plan to implement measures to remedy that harm. *Id.* ¶128. The amended petition for review asserts that the 2014 and 2018 Shale Gas Monitoring Reports published by DCNR (attached to the Amended Petition as Exhibits "C" and "D") establish that the extraction of oil and natural gas from these leases has caused, is causing, and will continue to cause, the degradation, depletion, and diminution of our State Forest public natural resources. The Foundation alleges that DCNR has ***failed to provide a framework in the 2016 SFRMP*** for its forest managers to make management decisions to prevent and remedy the current and future degradation of the State Forests from the shale gas development activities. *Id.* ¶129.

Based on these allegations, the Foundation asks this Court to make the following declarations:

• DCNR has violated its duties as trustee under the ERA *by failing to include in the 2016 SFRMP* (1) a comprehensive strategy for evaluating when the development of State Forest geologic resources may be authorized, (2) a comprehensive evaluation of the current degradation, diminution and depletion of State Forest trust assets from geologic resource development that must be remedied; (3) a comprehensive strategy for preventing and remedying the degradation, diminution and depletion of our State Forests' trust assets that has and will continue to occur as the result of such authorized geologic resource development, and (4) an analysis of the funding necessary to implement, all of which are essential to provide a prudent framework from which DCNR's forest managers can make decisions to comply with their constitutional duties under the ERA. *Id.* ¶135(a).

• DCNR has violated its duties as trustee under the ERA by *failing to provide* stakeholders, the beneficiaries of the State Forest public trust, with *any evaluation in the 2016 SFRMP* of DCNR's current compliance with the ERA or its strategy for remedying existing and anticipated degradation, diminution or depletion of our State Forests' public natural resources; or any explanation of how DCNR will solicit timely stakeholder input in specific decisions to authorize geologic resource development or remedy degradation that has and continues to occur from development already authorized by DCNR. *Id.* ¶135(b).

In this Count, the Foundation also asks this Court to direct DCNR to amend the 2016 SFRMP to correct these alleged violations. *Id.* ¶135(c).

In Count "F," the Foundation asserts that in the 2016 SFRMP, DCNR fails to provide a specific plan to develop and implement ecosystem management to retain the natural wild character and maintain the biological integrity of the State Forests. *Id.*

¶139.  Based on these allegations, the Foundation asks this Court to declare the following:

> •       DCNR has violated its constitutional duties under the ERA ***by failing to provide the people of Pennsylvania with a specific plan*** to implement ecosystem management in compliance with its duties to prevent and remedy the existing and future degradation of our State Forests from the current and future degradation caused by the extraction and sale of the oil and natural gas.  *Id.* ¶147(a).

In connection with this Count, the Foundation also asks this Court to compel DCNR to amend the 2016 SFRMP to (1) provide the people of Pennsylvania, as well as its own forest managers, with the goals and objectives that DCNR will seek to achieve to enhance and to sustain our State Forests' ecosystems consistent with the policies in *Penn's Woods* and to provide them with an evaluation of the cost of the measures necessary to carry out these goals and objectives; and (2) provide a specific plan for developing and implementing ecosystem management to provide a framework for forest managers to make management decisions to ensure that our State Forests and State Parks are restored and maintained as healthy ecosystems that support the natural diversity of plants and animals that can thrive in such ecosystems, as envisioned by the drafters of the ERA and voters who overwhelmingly supported this constitutional amendment; and provide an evaluation of the costs to carry out this plan and a process for allocating money from the Oil and Gas Lease Fund to pay those costs.  *Id.* ¶147(b) and (c).

Lastly, in Count "G," the Foundation argues that DCNR is in violation of its fiduciary duties as the trustee under the ERA as evidenced by its assertion in the 2016 SFRMP that

> [f]orest products . . .  are managed on state forest lands as a component of ecosystem management and to provide a wide variety of environmental, social, ***and economic values***.

(2016 SFRMP at 84) (emphasis added).

The Foundation contends that this excerpt indicates that DCNR is presently balancing the social and economic values from the sale of timber products with other ecological values of the State Forests in making management decisions. (Am. Pet. ¶150.) It claims that DCNR has *failed in the 2016 SFRMP to provide* its forest managers and the trust beneficiaries with *a framework* for evaluating compliance with the ERA when authorizing timber harvesting or the removal of other forest products from the State Forests. In this manner, the Foundation asks us to declare that DCNR violated its fiduciary duties as trustee under the ERA. *Id.* ¶156(a)-(c).

### III. DCNR's Preliminary Objections

On February 20, 2020, DCNR filed the following five preliminary objections[10] challenging the legal sufficiency of the amended petition for review:

1. The amended petition for review fails to state a claim for which relief can be granted because the 2016 SFRMP does not create a binding norm; any declaration related to the 2016 SFRMP would not bind or restrict DCNR's actions when managing the State forests.

---

[10] The Court's review of preliminary objections is limited to the pleadings. *See Pennsylvania State Lodge, Fraternal Order of Police v. Department of Conservation & Natural Resources*, 909 A.2d 413, 415-16 (Pa. Cmwlth. 2006), *aff'd*, 924 A.2d 1203 (Pa. 2007). The Court is "required to accept as true the well-pled averments set forth in the . . . [petition for review], and all inferences reasonably deducible therefrom." *Id.* "[T]he Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Id.* Because the sustaining of a demurrer results in a denial of the pleader's claim or a dismissal of its suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted. *Schott v. Westinghouse Electric Corporation*, 259 A.2d 443 (Pa. 1969); *Botwinick v. Credit Exchange, Inc*., 213 A.2d 349 (Pa. 1965). If the facts as pleaded state a claim for which relief may be granted under any theory of law, then there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be overruled. *Packler v. State Employees' Retirement Board*, 368 A.2d 673, 675 (Pa. 1977).

2. The amended petition for review fails to raise a controversy that is ripe for review because the 2016 SFRMP does not prescribe actions DCNR must take when carrying out the management of the State Forests, so no harm has or can occur from the 2016 SFRMP.

3. The Foundation lacks standing to bring this action because the amended petition for review does not allege any harm that has or will occur as a result of the 2016 SFRMP.

4. The amended petition for review fails to state a claim for which relief can be granted because the Foundation fails to establish that DCNR is required by law, namely the ERA, or any other mandate to develop and maintain any such plan or the amendments sought by the Foundation.

5. DCNR and Secretary Dunn have immunity from being directed to amend the 2016 SFRMP.

(DCNR's Preliminary Objections at 6-7.)

## IV. Analysis

### A. Failure to State Claim for Declaratory Relief

Pennsylvania is a fact-pleading state; a petition for review must not only give the respondent notice of what the petitioner's claim is and the grounds upon which it rests, but the petition for review must also formulate the issues by summarizing those facts essential to support the claim. *Alpha Tau Omega Fraternity v. University of Pennsylvania*, 464 A.2d 1349, 1352 (Pa. Super. 1983). Petitions for declaratory judgments are governed by the provisions of the Declaratory Judgments Act, 42

Pa.C.S. §§7531-7541. *Ronald H. Clark, Inc. v. Township of Hamilton*, 562 A.2d 965, 967 (Pa. Cmwlth. 1989). Declaratory judgments are not obtainable as a matter of right. *Id*. at 968-69. Thus, the granting of a petition for a declaratory judgment is a matter lying within the sound discretion of a court of original jurisdiction. *Gulnac by Gulnac v. South Butler County School District*, 587 A.2d 699, 701 (Pa. 1991).

In this declaratory judgment action, the Foundation's requests for judicial declarations may be separated into two categories: (1) those requests which ask us to declare that DCNR is in violation of the ERA based on specific declarations and announcements in the 2016 SFRMP;[11] and (2) those requests which ask us to make certain general pronouncements of the law.

### 1. Requests Which Ask Us to Declare that DCNR is in Violation of the ERA Based on Specific Statements in the 2016 SFRMP

With regard to the requested declarations in the first category, the Foundation is challenging DCNR's statements in the 2016 SFRMP – as opposed to specific acts that resulted from the actual implementation of the 2016 SFRMP. In other words, the Foundation relies exclusively on statements made in the 2016 SFRMP as

---

[11] *See* Am. Pet. ¶93(a) ("stated mission"), ¶93(b) ("declaring their mission in the 2016 SFRMP to be"), ¶93(e) ("expansion of its mission"), ¶93(h) ("by failing to require amendment of the 2016 SFRMP . . . [and] continu[ing] to assert that"), ¶93(i) ("failing to explain"), ¶103(a) ("assertion in the 2016 SFRMP"), ¶103(b) ("[i]n its 2016 SFRMP . . . DCNR's assertion that"), ¶103(c) ("by declaring in the 2016 SFRMP [that]"), ¶115(a) ("In its 2016 SFRMP to administer our State Forest trust assets, DCNR has violated its fiduciary duties as trustee under the ERA by asserting that"), ¶115(b) ("by asserting in the 2016 SFRMP that"), ¶115(g) ("by stating in the 2016 SFRMP"), ¶115(h) ("by approving the 2016 SFRMP"), ¶123(a) ("conditions established by DCNR in its 2016 SFRMP"), ¶123(b) ("by stating in the 2016 SFRMP"), ¶123(c) ("by failing to properly explain in their 2016 SFRMP"), ¶135(a) ("by failing to include in the 2016 SFRMP"), ¶135(b) ("by failing to provide . . . any evaluation in the 2016 SFRMP of"), ¶147(a) ("by failing to provide the people of Pennsylvania with a specific plan"), and ¶156(a)-(c) ("failed in the 2016 SFRMP to provide . . . a framework").

the factual basis for its claim that DCNR is mismanaging the State's forest assets. This is problematic for two reasons.

### a. The 2016 SFRMP is Not a Binding Norm

First, as DCNR points out, the Foundation fails to establish a legal requirement or mandate for the relief sought. Although declaratory judgment actions were designed, in part, to eliminate the substantial expense and uncertainty that results from piecemeal litigation, *Bayada Nurses, Inc. v. Department of Labor and Industry*, 8 A.3d 866, 876 (Pa. 2010), "[a] declaratory judgment must not be employed to determine rights in anticipation of events which may never occur or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic." *Gulnac*, 587 A.2d at 701.

"A general statement of policy is . . . merely an announcement to the public the policy which the agency hopes to implement in [the] future. . . . A general statement of policy, like a press release . . . announces the course which the agency intends to follow." *Home Builders Association of Chester and Delaware Counties v. Department of Environmental Protection*, 828 A.2d 446, 450 (Pa. Cmwlth. 2003), *aff'd*, 844 A.2d 1227 (Pa. 2004). "A general statement of policy . . . does not establish a 'binding norm' . . . A policy statement announces the agency's tentative intentions for the future." *Id.* at 451. This Court, in *Home Builders*, defined "binding norm" as follows:

> "Binding norm" means that the agency is bound by the statement until the agency repeals it, and if the statement is binding on the agency, it is a regulation. Additionally, in determining whether an agency action is a regulation or a statement of policy, one must look to the extent to which the challenged pronouncement leaves the agency free to exercise discretion to follow or not follow the announced policy in an individual case.

*Id.*

In *Pennsylvania Human Relations Commission v. Norristown Area School District*, 374 A.2d 671 (Pa. 1977), our Supreme Court considered whether a plan to desegregate schools was a statement of policy without binding effect or whether it carried the force of law. The Court determined that because the plan provided only tentative future actions on desegregation, it was therefore a statement of policy with no binding effect.

A review of the 2016 SFRMP confirms that it is not a binding norm. It contains no mandatory, restrictive language that is indicative of a regulation. It does not require or authorize DCNR to take any action with regard to the use of proceeds from the sale of our State Forests' oil and gas. It does not require or authorize the use of money from such sales for the unconstitutional purpose of paying for general State government operations, including paying for DCNR's operational costs, and does not grant any oil or natural gas leases. DCNR does not rely on the 2016 SFRMP as legal authority to do any of the acts alleged in the amended petition for review. In this way, this case is very different from *PEDF* where the Foundation challenged *legislative enactments* in the Fiscal Code as unconstitutional under the ERA. Because the 2016 SFRMP is not a regulation or rule that DCNR is *required* to follow, and DCNR is not required by any law to adopt a forest resource management plan, any judicial declaration by this Court that the statements made in the 2016 SFRMP are contrary to DCNR's obligations under the ERA would not bind DCNR or restrict its actions when managing the State Forests.

Moreover, we cannot ignore that the 2016 SFRMP was adopted *before* *PEDF* was decided in 2017. The Foundation concedes in its amended petition for review that that DCNR "is aware of and bound by the law established by Supreme Court in *PEDF*," but complains that DCNR has *yet to* "amend the 2016 Plan to comply

25

with the 2017 mandates of Supreme Court." (Am. Pet. ¶92.)  We decline to assume, as the Foundation asks us to, that DCNR is actively disregarding *PEDF* and its obligations under the ERA, merely because it has not yet adopted a new SFRMP after *PEDF* was decided.  This is an unwarranted inference that we are not obligated to accept as true.  *Pennsylvania State Lodge, Fraternal Order of Police v. Department of Conservation and Natural Resources*, 909 A.2d 413, 416 (Pa. Cmwlth. 2006).  The statements in the 2016 SFRMP were made before *PEDF* was decided and clearly do not reflect post-*PEDF* considerations.  We recognize the obligations enunciated by the Supreme Court in *PEDF* to preserve the corpus of the trust and commend the Foundation's efforts to ensure that is accomplished.  However, simply because a new forest plan (which, by all accounts, takes countless hours to create) has not yet been developed, does not support the conclusion that DCNR is presently managing the State Forests in violation of the ERA or contrary to *PEDF*.

### b. Ripeness

The second reason why the 2016 SFRMP is insufficient to form a basis for an ERA claim is controlled by the justiciability doctrine of ripeness.

Although the Declaratory Judgments Act is to be liberally construed, one limitation on a court's ability to issue a declaratory judgment is that the issues involved must be "ripe" for judicial determination, meaning that there must be the presence of an actual case or controversy.  *Ruszin v. Department of Labor and Industry, Bureau of Workers' Compensation*, 675 A.2d 366, 371 (Pa. Cmwlth. 1996).  Thus, the Declaratory Judgments Act requires a petition seeking declaratory relief to state an actual controversy between the petitioner and the named respondent.  *Pennsylvania State Lodge v. Department of Labor and Industry*, 692 A.2d 609, 613 (Pa. Cmwlth. 1997), *aff'd*, 707 A.2d 1129 (Pa. 1998).  It is beyond the jurisdiction of our courts,

26

appellate and original, to use the Declaratory Judgments Act to issue advisory opinions or to determine rights in anticipation of events which may never occur. *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 659 (Pa. 2005).

Pennsylvania courts have held that ripeness requires there to be a "concreteness" to government actions, otherwise no justiciable controversy exists for a court to review. *Texas Keystone Incorporated v. Pennsylvania Department of Conservation and Natural Resources*, 851 A.2d 228, 239 (Pa. Cmwlth. 2004) ("ripeness doctrine insists on a more concrete context, *i.e.*, one involving a final agency action and a factual record that would allow this Court to properly review [the] substantive claims"); *Ronald H. Clark,* 562 A.2d at 968. In *Gardner v. Department of Environmental Resources*, 658 A.2d 440 (Pa. Cmwlth. 1995), this Court explained the ripeness doctrine, as follows:

> Ripeness arises out of a judicial concern not to become involved in abstract disagreements of administrative policies. *Abbott Laboratories v. Gardner*, 387 U.S. 136 . . . (1967). It has been defined as the presence of an actual controversy. *American Council of Life Insurance v. Foster*, [] 580 A.2d 448 ([Pa. Cmwlth.] 1990). ***It insists on a concrete context, where there is a final agency action so that the courts can properly exercise their function***. The doctrine of ripeness is described as a legal principle "instructing courts to review government actions only when the government's position has crystallized to the point at which a court can identify a relatively discrete dispute." Davis & Pierce, Administrative Law Treatise, vol. II, § 15.12 (3d edition).

*Gardner*, 658 A.2d at 444 (emphasis added).

A claim based on speculative, anticipated events is not justiciable. *Berger v. Department of Environmental Resources*, 400 A.2d 905, 907 (Pa. Cmwlth. 1979) ("[A] declaratory judgment is not to be employed for the determination of rights in

27

anticipation of an event which may never occur."). In *Berger*, the landowners sought a pre-decision review of the procedure by which the Department of Environmental Resources (DER) was evaluating an application for a permit to construct and operate a sanitary landfill. We sustained DER's preliminary objection that the petition for review was premature because DER's refusal to consider the factors suggested by the landowners did not constitute an appealable determination.

In *Chester Upland School District v. Commonwealth*, 495 A.2d 981 (Pa. Cmwlth. 1985), a school district challenged the constitutionality of an amendment to the public school code which prohibited some school districts from having residency requirements for employees. The school district had taken preliminary steps to discharge certain employees for failure to reside within the district and alleged that those employees, claiming protection under the amendment, threatened to bring legal action against the district if they were terminated. However, because the school district's petition contained no averments that the employees ever sought to enforce the amendment, or that such action was imminent or inevitable, we held that a declaratory judgment was inappropriate.

Similarly, in *Woods Schools v. Department of Education*, 514 A.2d 686 (Pa. Cmwlth. 1986), a private school sought an order for proceedings to disenroll an exceptional student or, alternatively, to guarantee full payment of that student's tuition. However, because there was nothing in the school's petition from which we could infer that payment would not be made, we determined that no justiciable controversy existed because it could not yet be determined whether the school would be fully reimbursed.

We apply the same rationale here to conclude that the amended petition for review fails to raise a controversy that is ripe for review because the Foundation has not alleged that DCNR has committed a concrete government act triggering rights

28

or remedies of an affected party that can be reviewed by this Court. Undeniably, the 2016 SFRMP *discusses* the economic benefits to the Commonwealth of State Forest products. In the section of the 2016 SFRMP titled "Timber and Forest Products," the 2016 SFRMP states that "timber and other forest products on [S]tate [F]orest lands are managed to promote and maintain desired landscape conditions and provide sustainable social and economic benefits to the [C]ommonwealth." (2016 SFRMP at 8.) The 2016 SFRMP also explains that

> Pennsylvania's [S]tate [F]orests contain an abundance of high-quality forest products, an integral part of the materials base of the [C]ommonwealth's $19 billion per year forest products industry, which employs nearly 58,000 people. Both Pennsylvania's consumers and the general economy benefit from this regionally important supply of forest products, including timber. Timber sales generate significant revenue for the [C]ommonwealth. From 2008 to 2014, Pennsylvania received income from timber sales averaging approximately $22.5 million per year.

*Id.* at 9.

It further explains that Pennsylvania's State Forests have been leased for valuable oil and gas reserves since 1947. *Id.* at 14. In 2009, shale-gas development began on State Forest lands. *Id.* at 12. According to the 2016 SFRMP, subsurface geologic resources are managed to provide long-term benefits to Commonwealth citizens while adhering to the principles of ecosystem management. *Id.* at 13. The 2016 SFRMP reports that

> [t]he forest lands also provide economic benefits to the [C]ommonwealth through leasing for natural gas development, supplying approximately $100 million in annual revenues to the [C]ommonwealth from lease agreements and gas royalties, and additionally contributing to local communities.

*Id.* at 20.

29

Contrary to the Foundation's view, these statements in and of themselves are simply not actionable. In fact, the Supreme Court in *PEDF* recounted similar facts. *See PEDF*, 161 A.3d at 919-21. Aside from these statements, which basically recount the state of affairs before *PEDF* was decided, the Foundation does not cite any instances where DCNR is, at present, using money from the extraction and sale of State Forests' oil and natural gas for purposes other than conserving and maintaining the public natural resources of our State Forests. Finding a constitutional violation based on statements in the 2016 SFRMP, without reference to any particular ***action*** on the part of DCNR, would take us into the realm of speculation and conjecture.

Accordingly, because the Foundation has failed to articulate any imminent injuries occasioned by adoption of the 2016 SFRMP, and has failed to anchor its amended petition for review on any particular action taken by DCNR, we must conclude that the matter is not ripe, and no controversy is present that could permit us to enter a declaratory judgment.[12] Our disposition should not be understood to foreclose the possibility that a claim under the ERA might ripen if DCNR implements its forest resources plan in a manner which violates the ERA. Should the Foundation find that a definite course of action or inaction on the part of DCNR is objectionable, there may be no impediment to judicial review at that time.

## 2. Requests Which Ask Us to Make Certain General Pronouncements of Law

Next, the Foundation asks that we make certain general pronouncements of the law, including:

- The phrase "in the best interest of the Commonwealth" in section 302(a)(6) of the CNRA, 71 P.S. §1340.302(a)(6), does not mean that DCNR can lease and sell our public

---

[12] Having concluded that a judicial declaration by this Court would be premature at this juncture, we need not address DCNR's preliminary objection raising lack of standing.

30

natural resources for money for the economic use by the Commonwealth in violation of the ERA. *Id.* ¶93(c).

- DCNR's mission as stated in CNRA Section 101(b) to manage the State Forest lands to assure their long-term health, sustainability and economic use does not require DCNR to authorize the extraction and sale of the oil and gas that is a part of the public natural resources of our State Forests when that activity will degrade, diminish and deplete the State Forests' public natural resources contrary to the mandates of the ERA. *Id.* ¶93(d).

- The oil and natural gas resources of our State Forests, as part of the corpus of the public trust under the ERA, cannot be used for the economic benefit of the Commonwealth because such economic use violates the purpose of the trust, which is to conserve and maintain those resources for the benefit of the people. *Id.* ¶93(f).

- DCNR's proprietary attempt to "balance" rights under the ERA with rights established with other articles of the Constitution, including the Commonwealth's right to appropriate funds and enact laws, violates Article I Section 25 of the Pennsylvania Constitution. *Id.* ¶115(c).

- DCNR has no constitutional right under the ERA to lease our State Forest land and sell our State Forests' oil and natural gas. *Id.* ¶115(d).[13]

- DCNR cannot "balance" the constitutional rights established under the ERA with any proprietary activities or policies involving non-trust purposes of the Commonwealth. *Id.* ¶115(e).

---

[13] Contrary to the Foundation's assertion, *PEDF* never held that DCNR has no constitutional right under the ERA to lease our State Forest lands and sell our State Forests' oil and natural gas. Rather, it acknowledges the right, but held that "oil and gas leases may not be drafted in ways that remove assets from the corpus of the trust or otherwise deprive the trust beneficiaries (the people, including future generations) of the funds necessary to conserve and maintain the public natural resources." 161 A.3d at 936.

- DCNR cannot "balance" the constitutional rights established under the ERA with any proprietary activities that would result in the degradation, diminution and depletion of the public natural resources of our State Forests, including the oil and natural gas resources that are a part thereof. *Id.* ¶115(f).

The proscription against issuing advisory opinions or decisions in the abstract restrains the courts of this Commonwealth from addressing claims made, which at bottom seek merely an academic answer to a hypothetical question rather than redress of an injury. *Spahn v. Zoning Board of Adjustment*, 977 A.2d 1132, 1151 (Pa. 2009).

As noted above, we are not satisfied that the Foundation has presented this Court with a justiciable dispute or controversy within the meaning of the Declaratory Judgments Act. Any pronouncement by this Court as to the legal validity of the requested declarations would be in the abstract, and thus, an impermissible advisory opinion.

### B. Failure to State a Claim – Mandamus Claims

Although the Foundation does not identify its claims as such, this Court concludes, based on the nature of the relief sought, that the Foundation's amended petition for review does, indeed, seek mandamus relief because it asks us to direct DCNR to fulfill its responsibilities as a trustee of the Commonwealth's natural resources under the ERA consistent with *PEDF*. *See* Am. Pet. ¶¶135(c), 147(b)-(c).

Mandamus is an extraordinary writ. *Bronson v. Board of Probation and Parole*, 421 A.2d 1021 (Pa. 1980). It will only be granted to compel performance of a ministerial duty where the petitioner establishes a clear legal right to relief and a corresponding duty to act by the respondent. *Waters v. Pennsylvania Department of Corrections*, 509 A.2d 430 (Pa. Cmwlth. 1986). Mandamus is not proper to establish

32

legal rights but is only appropriately used to enforce those rights which have already been established. *Id.* "Thus, in an action involving an administrative agency's exercise of discretion, the court may only direct the agency to perform the discretionary act and may not direct the agency to exercise its judgment or discretion in a particular way or direct the retraction or reversal of action already taken." *McGill v. Pennsylvania Department of Health, Office of Drug & Alcohol Programs*, 758 A.2d 268, 270 (Pa. Cmwlth. 2000).

The Foundation seeks to compel DCNR to amend the 2016 SFRMP in the ways outlined in the amended petition for review. However, the Foundation does not have a clear right to such relief. It points to no legislative enactments or regulatory provisions, and we have found none, that mandate DCNR to develop and maintain a forest resource management plan in the first place. Because the Foundation seeks to compel DCNR to do something it is not mandated to do, mandamus will not lie, and we sustain DCNR's preliminary objections as to the mandamus claims.

Because we conclude that the Foundation has failed to state cognizable claims for declaratory or mandamus relief based on the above, we need not reach the question of sovereign immunity.

## V.  Conclusion

The Foundation has not demonstrated that its action for declaratory relief is ripe for judicial review. It has also failed to demonstrate that it is entitled to the mandamus relief it seeks. Accordingly, we sustain DCNR's preliminary objections and dismiss the amended petition for review.

_____
PATRICIA A. McCULLOUGH, Judge

33

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Environmental
Defense Foundation,
          Petitioner

          v.

Commonwealth Department of
Conservation and Natural Resources,
and Cindy Adams Dunn, in her
official capacity as Secretary,
          Respondents

:
:
:
:
:  No.  609 M.D. 2019
:
:
:
:
:
:
:
:

## *ORDER*

AND NOW, this 6th day of August, 2021, the Preliminary Objections of the Commonwealth Department of Conservation and Natural Resources (DCNR), and Cindy Adams Dunn, in her official capacity as Secretary of Conservation and Natural Resources, of DCNR, to the Amended Petition for Review filed by the Pennsylvania Environmental Defense Foundation are hereby SUSTAINED. The Amended Petition for Review is dismissed.

_____
PATRICIA A. McCULLOUGH, Judge